**STATE of Iowa, Appellant,**

v.

**Kattie Mae PRICE, Appellee.**

No. 58119.

Supreme Court of Iowa.

Jan. 21, 1976.

Richard C. Turner, Atty. Gen., Jim P. Robbins, Asst. Atty. Gen., and David J. Dutton, County Atty., for appellant.

Walter W. Rothchild, Waterloo, for appellee.

Gordon E. Allen, Des Moines, for Iowa Civil Liberties Union, amicus curiae.

Heard before MOORE, C. J., and MASON, LeGRAND, HARRIS and McCORMICK, JJ.

McCORMICK, Justice.

We reverse a trial court ruling which sustained defendant's challenge to the constitutionality of Iowa's statute banning prostitution, § 724.1, The Code.

A county attorney's information was filed charging defendant with prostitution, alleging that "on or about the 27th day of September 1974, in the County of Black Hawk and State of Iowa, [she] did willfully, unlawfully and feloniously for the purpose of prostitution and lewdness, resort to, use and occupy a certain house for such purpose in the City of Waterloo, Iowa, and was there found leading a life of prostitution and lewdness * * * in violation of Section 724.1 of the 1973 Code of the State of Iowa".

Section 724.1 provides:

"If any person, for the purpose of prostitution or lewdness, resorts to, uses, occupies, or inhabits any house of ill fame or place kept for such purpose, or if any person be found at any hotel, boarding house, cigar store, or other place, leading a life of prostitution or lewdness, such person shall be imprisoned in the penitentiary not more than five years."

Defendant demurred to the information. As amended, the demurrer attacked the statute on grounds of vagueness, overbreadth, equal protection, and privacy. The trial court held the word "lewdness" as used in the statute was unconstitutionally vague and, in effect, struck it from the statute. Then the court held the remainder of the statute denied equal protection to women and therefore sustained the demurrer. The State assigns the grounds of the ruling as error. Defendant contends the ruling was not only correct on those grounds but can also be sustained on the ground the statute is an unconstitutional invasion of her right of privacy. In an amicus curiae brief, the Iowa Civil Liberties Union supports defendant's position.

Two questions are presented in the present posture of this case. One is whether the trial court erred in sustaining the demurrer on equal protection grounds. The other is whether the demurrer should have been sustained on the privacy ground.

I. *Equal protection.* Defendant's equal protection argument rests upon the following syllogism:

Major premise. A statute which punishes only the female for offering her body to indiscriminate sexual intercourse with men denies women equal protection assured in the Fourteenth Amendment of the United States Constitution.

Minor premise. Section 724.1 punishes only females because the part of the statute which purports to punish men for the same conduct is unconstitutionally vague in violation of the due process clause of the Fourteenth Amendment.

Conclusion. Therefore § 724.1 is unconstitutional on equal protection grounds.

We do not find it necessary to examine defendant's major premise because we believe she is in no position to establish her minor premise. Her conclusion is thus unwarranted.

Defendant's equal protection argument depends upon a judicial declaration that the part of the statute which would punish men for the same conduct as it punishes women is void for vagueness. As written, the statute purports to treat men and women alike. It was so interpreted in *State v. Rayburn,* 170 Iowa 514, 153 N.W. 59 (1915). In that case a man was prosecuted and convicted

under the statute for resorting to a house of ill fame for the purpose of lewdness. By demurrer and motions during and after trial the defendant unsuccessfully contended the term "any person" as used in the statute referred only to females. When he pressed this contention on appeal, the State conceded that the word "prostitution" in the statute included only the act of a woman. This was in apparent recognition of the fact that at common law prostitution was defined as the practice of a female offering her body to indiscriminate sexual intercourse with men. *State v. Clark*, 78 Iowa 492, 43 N.W. 273 (1889). Defendant asserted the word "lewdness" was synonymous with prostitution so that males were not subject to prosecution under the statute. In rejecting this assertion, the court said:

"If 'prostitution' and 'lewdness' are synonymous, it would have been unnecessary [sic] to use but one of the words. There was presumably some reason for using both. The statute reads that, if 'any person,' for the purpose of prostitution or lewdness, resorts, etc. If a man and woman go together to or resort to a house of ill fame for the purpose of having sexual intercourse, her purpose would be for prostitution, his for lewdness. Or a man could go by himself for the purpose of having sexual intercourse, which would be lewdness under this statute and under definitions hereafter given. Or a man could resort to such a place, and be guilty of lewdness without sexual intercourse. Lewdness may not import criminal indulgence, but is generally used as indicating gross indecency with respect to the sexual relations. *State v. Mitchell*, 149 Iowa 362, 366, 128 N.W. 378. Sexual intercourse would, of course, constitute lewdness, but, as suggested, there may be lewdness without sexual intercourse at all, and the man, as well as the woman, may be guilty of it. We think the statute broad enough to cover situations such as those suggested. The purpose of the Legislature was to suppress such conduct and reach both parties. We think the

statute fairly and reasonably bears that construction. The words 'any person' include all persons." 170 Iowa at 517, 153 N.W. at 60.

Accord, *State v. Gardner*, 174 Iowa 748, 156 N.W. 747 (1916).

■ Under the *Rayburn* and *Gardner* holdings, it is clear the legislature sought to prohibit and make punishable on the same terms equivalent conduct of males and females. What would be prostitution for a female would be equally prohibited and punished as lewdness for a male. To the extent lewdness had a broader meaning than prostitution, it applied to male and female alike. Thus no discrimination based on sex appears on the face of the statute.

Such discrimination occurs only if the statute is judicially truncated by removal of all lewdness offenses on the ground of vagueness.

■ Statutory language offends due process under the Fourteenth Amendment on the ground of vagueness if it does not inform a person of ordinary intelligence what conduct it forbids. A penal statute must give a person of ordinary intelligence fair warning of what is prohibited, and, in order to avoid arbitrary and discriminatory enforcement, it must provide an explicit standard to law enforcement personnel. *Grayned v. City of Rockford*, 408 U.S. 104, 108–109, 92 S.Ct. 2294, 2298–2299, 33 L.Ed.2d 222, 227 (1972). Defendant contends the word "lewdness" in § 724.1 is vague under this standard. She relies upon *State v. Kueny*, 215 N.W.2d 215, 219 (Iowa 1974), in which we held the word was unconstitutionally vague as employed in § 725.1, The Code, 1971. We later held the word to be vague as used in § 99.1, The Code. *State ex rel. Faches v. N.D.D. Inc.*, 228 N.W.2d 191 (Iowa 1975). The State denies the word is vague as used in § 724.1 and argues this court can put a limiting interpretation on it which will free it of constitutional defect.

■ Neither party has addressed the issue whether this defendant has standing to raise the vagueness question. However, this issue is in the case even though not addressed by the parties. It is in the case because it is in every case in which the constitutionality of a statute is attacked. The principle was explained by the United States Court in *Broadrick v. Oklahoma*, 413 U.S. 601, 610–611, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830, 839 (1973):

"Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court. [citations] A closely related principle is that constitutional rights are personal and may not be asserted vicariously. [citation] These principles rest on more than the fussiness of judges. They reflect the conviction that under our constitutional system courts are not roving commissions assigned to pass judgment on the validity of the Nation's laws. [citation]."

See *United States v. Raines*, 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960).

We have previously applied this principle of constitutional adjudication. *State v. Willis*, 218 N.W.2d 921, 923 (Iowa 1974) ("one to whom application of a statute is constitutional, with exceptions not involved here, lacks standing to attack the statute on the ground it might be susceptible of unconstitutional application to other persons or other situations"); *Upper Mo. River Corp. v. Board of Rev. Woodbury Cty.*, 210 N.W.2d 828, 831 ("Generally, one attacking the constitutionality of a statute is not the champion of any rights except his own."); *Lee Enterprises, Inc. v. Iowa State Tax Com'n*, 162 N.W.2d 730, 740 (Iowa 1968) ("As a general rule the constitutionality of a statute is to be considered in the light of the standing of the party who seeks to raise

the question and of its particular application.").

■ Exceptions to this principle have been recognized. One exception is a situation where persons who are not parties to the suit "stand to lose by its outcome and yet have no effective avenue of preserving their rights themselves." *Broadrick v. Oklahoma*, supra, 413 U.S. at 611, 93 S.Ct. at 2915, 37 L.Ed.2d at 839. Another exception is a situation where First Amendment rights are implicated. Ibid. Neither of these exceptions is applicable in the present case. Third parties charged only with a "lewdness" offense under the statute are free to assert their rights in prosecutions against them and therefore have an "effective avenue of preserving their rights themselves". And defendant's vagueness attack on the statute does not implicate First Amendment rights. Compare *State v. Williams*, 238 N.W.2d 302 (Iowa 1976), filed separately this date, where such rights were involved. See also *State v. Kueny*, supra, *State ex rel. Faches v. N.D.D. Inc.*, supra, and *State v. Wedelstedt*, 213 N.W.2d 652 (Iowa 1973). The defendant in this case is in no position to borrow an objection to the statute which is available to someone else in a different case.

Although even when the exceptions do not apply a statute attacked on vagueness grounds must initially be examined "on its face", its constitutionality is not determined in the abstract. The strong presumption of validity of legislation demands that courts in these cases avoid declarations of unconstitutionality based upon facts not presented in the particular prosecution:

"Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed. [citation] In determining the sufficiency of the notice a statute must of necessity be examined in the light of the conduct with which a defendant is charged." *United States v. National Dairy Products Corp.*, 372 U.S. 29,

32–33, 83 S.Ct. 594, 598, 9 L.Ed.2d 561, 565–566 (1963).

When the conduct alleged would come within the proscription of the statute under any construction, alleged imprecision in other applications has no relevance. *Broadrick v. Oklahoma*, supra, 413 U.S. at 608, 93 S.Ct. at 2914, 37 L.Ed.2d at 837–838.

Whether the word "lewdness" is vague in applications to conduct other than prostitution has no relevance in the present case. This defendant is charged with inhabiting the place involved for the purpose of prostitution and lewdness and with leading a life there of prostitution and lewdness in violation of the statute. The accusation of lewdness is based upon prostitution. *State v. Rayburn*, supra. Prostitution and lewdness based upon prostitution come squarely within what the Supreme Court has called the "hard core" of the statute's proscriptions. *Broadrick v. Oklahoma*, supra. Any imprecision regarding the meaning of "lewdness" when applied to other situations is not present here. Its meaning is clear when limited to its specific basis in prostitution. Hence, defendant is one to whom the statute may constitutionally be applied. It is not vague when applied to the conduct charged to her. Therefore she cannot be heard now in a challenge of the statute on the ground it may conceivably be applied unconstitutionally to another. This will not prevent defendant from renewing her constitutional challenge at trial if the State should attempt to enlarge the basis of the charge by reliance upon conduct other than prostitution to establish lewdness.

The trial court erred in holding the word "lewdness" void for vagueness upon the challenge raised in defendant's demurrer. As a result, the court erred in finding the statute punishes women for conduct which would not be punishable when engaged in by men and in holding the statute thus offends equal protection.

■ II. *The right of privacy.* Defendant contends the statute is unconstitutional upon the independent ground that it infringes her constitutionally protected right of privacy. This ground was alleged in her demurrer but was not ruled on by the trial court. She now urges the result reached by the trial court is sufficiently supported on this ground. Since she urged this ground in the trial court as well as on appeal, she may rely on it as a basis for affirmance if it is meritorious. *In re Estate of Poulos*, 229 N.W.2d 721, 725 (Iowa 1975). We need not adopt a trial court's premise to sustain its conclusion. *State ex rel. Turner v. United Buckingham F.L., Inc.*, 211 N.W.2d 288, 290 (Iowa 1973).

No mention of a right of privacy appears in the United States Constitution. Yet, the Supreme Court has found a right of privacy does exist, founded in the Fourteenth Amendment's concept of personal liberty and restrictions upon state action. *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

The question here is whether a statute proscribing resorting to or living in a brothel for the purpose of prostitution or leading a life of prostitution at another place unconstitutionally invades defendant's right of privacy. Since this ground challenges the right of the State to punish prostitution at all, defendant clearly has standing to urge it in this prosecution against her under Code § 724.1.

Defendant and amicus rely upon three United States Supreme Court decisions as articulating the constitutional right of privacy which shields her conduct from prosecution here. They are *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), *Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972), and *Roe v. Wade*, supra. In *Griswold* the Supreme Court held that the Constitution protects a right of marital privacy. A Connecticut law forbidding the use of contraceptives was held to invade this right. In *Eisenstadt*, the Court extended the right to use contraceptives to unmarried persons in striking, on equal protection grounds, a Massachusetts statute making it a crime to

sell or give contraceptives to unmarried persons. In *Roe*, the right to privacy was recognized in relation to a woman's decision regarding abortion.

From these cases defendant argues prostitution comes within the constitutionally protected zone of privacy. She contends that indiscriminate sexual intercourse is wholly a matter of individual preference which should not be subject to criminal sanctions.

■ The zone of privacy advocated by defendant goes beyond the limits recognized by the Supreme Court. In *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 65, 93 S.Ct. 2628, 2639, 37 L.Ed.2d 446, 462 (1973), the Court noted, "This privacy right encompasses and protects the personal intimacies of the home, the family, marriage, motherhood, procreation, and child rearing". The *Paris* Court held the right did not include the right to watch obscene movies in places of public accommodation. We do not believe prostitution is identifiable with or reasonably analogous to the kinds of sexual conduct which have been recognized as within the constitutional right of privacy.

■ The obvious purpose of Code § 724.1 is to outlaw and punish commercial sexual relations. This is true even though the court has said a woman may be identified as a prostitute if she offers her body to indiscriminate sexual intercourse with men without a showing she did so for pecuniary gain. *State v. Clark*, 78 Iowa 492, 43 N.W. 273 (1889). The gist of § 724.1 is to reach both the buyer and seller of sex in the traditional commercial setting. The brothel or other situs of prostitution is much closer to the "public accommodation" setting of *Paris Adult Theatre I v. Slaton*, supra, than to the seclusion and privacy of the marital bedroom in *Griswold* or the privacy of the home in *Stanley v. Georgia*, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). Prostitution implicates more than private sexual relations between consenting adults. It affects others including the community. Al-

though usually transacted in private, it is nevertheless business which is frequently negotiated in public. Although intimate, it is impersonal. Although involving only consenting adults at the time, it may be a factor in the spread of venereal disease or have a close relationship with other criminal activity. See, generally, George, *Legal, Medical and Psychiatric Considerations in the Control of Prostitution*, 60 Mich.L.Rev. 717 (1962). In *Paris Adult Theatre I v. Slaton*, supra, the Supreme Court recognized the legitimacy of analogous considerations in ascertaining whether the constitutional right of privacy was infringed by State efforts to regulate commercialized obscenity.

■ Moreover, as the Supreme Court has held, even where it exists the right of privacy is not unqualified. It is subject to regulation when necessary to support a compelling state interest. *Roe v. Wade*, supra, 410 U.S. at 154–155, 93 S.Ct. at 727–728, 35 L.Ed.2d at 177–178. We need not decide whether the State established such an interest in this case, because we rest our decision of this question upon a holding that prostitution is not constitutionally protected. Cf. *United States v. Moses*, 339 A.2d 46 (D.C. App.1975).

We do not sit to decide the wisdom of legislation. We decide here only that the legislature has not invaded defendant's constitutionally protected right of privacy by enacting § 724.1.

This case must be reversed and remanded for trial. § 777.8, The Code.

Reversed and remanded.