# IN THE SUPREME COURT OF IOWA

No. 61 / 07–0546

Filed August 15, 2008

**ANISA MIKAH SMITH,**

Appellant,

vs.

**IOWA DEPARTMENT OF HUMAN SERVICES**
and **IOWA DEPARTMENT OF INSPECTIONS AND APPEALS,**

Appellees.

---

Appeal from the Iowa District Court for Hardin County, Carl D. Baker, Judge.

Appellant seeks reversal of district court decision affirming agency finding she committed dependent adult abuse. **AFFIRMED.**

Lawrence B. Cutler of Craig & Smith, LLP, Eldora, for appellant.

Thomas J. Miller, Attorney General, and Mark Hunacek, Assistant Attorney General, for appellees.

**CADY, Justice.**

In this appeal from a district court decision that affirmed a finding by the Iowa Department of Inspections and Appeals (DIA) that a caretaker committed dependent adult abuse, we must decide under our standard of review whether DIA erred in concluding the conduct of the caretaker constituted sexual exploitation of a dependent adult. We agree with the conclusion of the district court and affirm the district court order.

## I. Background Facts and Proceedings.

Anisa Smith was employed as a certified nursing assistant at a licensed healthcare facility in Iowa. One of the residents at the facility was an elderly man identified in these proceedings as E.M. E.M. was ninety years old. He suffered from a number of health issues, including depression. He was a dependent adult, and Smith was one of his caretakers.[1]

Over time, E.M. became emotionally attached to Smith, and his amorous feelings led him to physically express his affections. On more than one occasion, E.M. placed his hand on Smith's legs and inner thigh. On another occasion, E.M. attempted to touch her breast. On March 18, 2005, Smith alerted her supervisor, the director of nursing, to the conduct. Smith was told to avoid caring for E.M.

On March 20, 2005, Smith was on duty at the facility. Her shift was nearly concluded, and she had completed her required tasks. Instead of assisting other caretakers until the conclusion of her shift pursuant to the

---

[1]A dependent adult is defined as "a person eighteen years of age or older who is unable to protect the person's own interests or unable to adequately perform or obtain services necessary to meet essential human needs, as a result of a physical or mental condition which requires assistance from another, or as defined by departmental rule." Iowa Code § 235B.2(4) (2003). A caretaker is defined as "a related or nonrelated person who has the responsibility for the protection, care, or custody of a dependent adult as a result of assuming the responsibility voluntarily, by contract, through employment, or by order of the court." *Id.* § 235B.2(1). It was agreed by the parties in this case that E.M. was a dependent adult and Smith was a caretaker.

policy of the facility, Smith visited E.M. in his room. Another staff member located outside the room heard E.M. ask Smith, "[W]hen are we going to have a night like last night?"[2] Smith giggled in response. At about the same time, two other staff members arrived, and all three entered the room together.

The staff members observed Smith sitting in a reclining chair with her feet on E.M.'s walker. She was fully clothed. E.M. was seated next to Smith in his wheelchair, facing her. His arm was extended over the side of the chair, and his hand was touching her inner thigh. As the three staff members entered, Smith removed E.M.'s hand from her lap and said "no." Smith promptly left the room. She was eventually fired over the incident. E.M. became distraught and depressed. He believed Smith's termination was his fault and later felt he had been unfaithful to his late wife.

The health care facility notified the DIA of the incident. The DIA conducted an investigation and determined Smith committed dependent adult abuse by sexually exploiting E.M. Smith appealed and requested a hearing. An administrative hearing was held where Smith and five of the facility's employees testified and a number of exhibits were admitted. Smith testified E.M.'s hand was only on her inner thigh for an instant and that she was verbally telling him to remove it when the other staff members entered the room. She claimed she did not consent to the actions by E.M.

The administrative law judge who presided over the hearing upheld the previous finding of abuse made by the DIA. The judge found Smith allowed E.M. to place his hand between her clothed inner thighs for the purpose of arousing or satisfying the sexual desires of either Smith or E.M. and

---

[2]The previous night, staff members heard allegations of inappropriate activity between E.M. and Smith. Thus, staff members were on the lookout for inappropriate conduct between the two.

concluded this conduct amounted to dependent adult abuse by sexual exploitation under section 235B.2(5)(*a*)(3). Smith requested review by the director of the department. The director affirmed the decision of the administrative law judge. Smith petitioned for judicial review. On judicial review, the district court held the findings of the agency were supported by substantial evidence, and the statute was not unconstitutional. Smith appealed and essentially raises three claims of error. First, Smith argues the agency erred in its interpretation of the definition of sexual exploitation found in Iowa Code section 235B.2(5)(*a*)(3). Second, Smith asserts the evidence does not adequately support the agency's conclusion that she consented to sexual conduct. Finally, Smith argues Iowa Code section 235B.2(5)(*a*)(3) is facially unconstitutional.

**II. Standard of Review.**

Dependent adult abuse proceedings are reviewed pursuant to chapter 17A. Iowa Code § 235B.10(3). When reviewing district court decisions on judicial review of agency action under chapter 17A, "we determine whether our conclusions are the same as those reached by the district court." *Mosher v. Dep't of Inspections & Appeals*, 671 N.W.2d 501, 508 (Iowa 2003). "The agency decision itself is reviewed under the standards set forth in section 17A.19(10)." *Id.* To the extent Smith raises constitutional questions, our review is de novo. *Grovijohn v. Virjon, Inc.*, 643 N.W.2d 200, 202 (Iowa 2002).

**III. Dependent Adult Abuse by Sexual Exploitation.**

Iowa Code section 235B.2(5)(*a*)(3) prohibits sexual exploitation of a dependent adult. It defines sexual exploitation, in relevant part, as

> any consensual or nonconsensual sexual conduct with a dependent adult for the purpose of arousing or satisfying the sexual desires of the caretaker or dependent adult, which includes but is not limited to kissing; touching of the clothed or

unclothed inner thigh, breast, groin, buttock, anus, pubes, or genitals . . . .

Iowa Code § 235B.2(5)(*a*)(3). Importantly, sexual exploitation requires a caretaker to engage in sexual conduct, either consensual or nonconsensual, with a dependent adult for the purpose of arousing or satisfying the sexual desires of the caretaker or the dependent adult. The conduct specifically includes touching certain areas of the body, including the inner thigh and groin.

While Smith challenges the sufficiency of the evidence to support the finding of all elements of sexual exploitation, she primarily seizes on the "consensual or nonconsensual" sexual conduct component of the definition of sexual exploitation. She asserts that sexual conduct between two persons is consensual only when both persons consent, but is nonconsensual when just one person does not consent. Thus, she argues nonconsensual sexual conduct must be interpreted under the statute to constitute sexual exploitation only when the dependent adult does not consent and not when the caretaker is the nonconsensual person. In other words, Smith claims the statutory definition of sexual exploitation cannot be interpreted to include a caretaker who is the victim of a sexual assault by a dependent adult. Relying on that interpretation, Smith argues the evidence does not support a finding that she consented to the touching by E.M., and there was no evidence she engaged in sexual conduct by affirmatively touching E.M.

We are bound by the findings of an administrative agency if supported by substantial evidence in the record as a whole. *Grant v. Iowa Dep't of Human Servs.*, 722 N.W.2d 169, 173 (Iowa 2006). Evidence is substantial when a neutral, detached, and reasonable person would find it sufficient to establish the fact at issue. Iowa Code § 17A.19(10)(*f*).

The central finding of dependent adult abuse in this case is that Smith allowed E.M. to place his hand on her inner thigh. The facts that support this finding date back to the days preceding the March 20 incident when Smith reported to her supervisor that E.M. had been touching her in inappropriate ways. Yet, despite a warning by her supervisor to stay away from E.M., Smith visited him in the privacy of his room on March 20. During this visit, she positioned herself in a chair in a way that enabled E.M. to touch her inner thigh from his wheelchair. A sexually suggestive comment exchanged between Smith and E.M. was overheard at the time.

This evidence is sufficient to support a finding that Smith willingly engaged in consensual sexual conduct with E.M. for the purpose of arousing or satisfying the sexual desires of either of them. In particular, it is not important that the evidence might also support a finding that Smith did not consent to the touching by E.M. The evidence must only support the finding made. *See Grant*, 722 N.W.2d at 173. While Smith testified otherwise, a reasonable fact finder could have concluded that she consented to the touching by E.M. and removed his hand from her inner thigh and voiced opposition to the presence of his hand on her body only when the conduct was detected by others. Consequently, it is unnecessary to further consider Smith's claim that sexual exploitation under the statute does not include sexual conduct with a nonconsensual caretaker.

Additionally, there is nothing in the statute that requires a caretaker to affirmatively touch a dependent adult in a sexual manner to commit sexual exploitation. The statutory definition of sexual exploitation hinges on "sexual conduct," and there is no language in the statute that confines the phrase to require the caretaker to affirmatively touch the dependent adult in a sexual manner. Instead, "sexual conduct" has a much broader meaning under the statute and requires the actions of the caretaker to be examined in

light of all of the circumstances to determine if the conduct at issue was sexual and done for the purpose of arousing or satisfying the sexual desires of the caretaker or the dependent adult. In this case, Smith affirmatively permitted a wheelchair-bound dependent adult to touch an area of her body in a sexual manner by sitting in a chair in such a way that allowed the touching to take place. These facts amount to sexual conduct without the need to further show touching by the caretaker.

### IV. Constitutionality of Iowa Code Section 235B.2(5)(*a*)(3).

Smith also argues the district court erred in failing to find the definition of sexual exploitation under Iowa Code section 235B.2(5)(*a*)(3) facially unconstitutional based on her claim that the language of the statute impermissibly includes caretakers who are nonconsensual victims of sexual conduct perpetrated by a dependent adult. Importantly, Smith does not challenge section 235B.2 as applied to her.[3]

We first recognize that we can remedy a claim of a constitutional infirmity in a statute by interpreting the statute to avoid the constitutional claim. *See State v. Abrahamson*, 696 N.W.2d 589, 593 (Iowa 2005) (" 'If the law is reasonably open to two constructions, one that renders it unconstitutional and one that does not, the court must adopt the interpretation that upholds the law's constitutionality.' " (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Visser*, 629 N.W.2d 376, 380 (Iowa 2001))). Yet, we also recognize that "a person lacks standing to make a facial challenge to a statute, if a statute can be constitutionally applied to that person's conduct." *State v. Bower*, 725 N.W.2d 435, 443 (Iowa 2006);

---

[3]In a brief submitted to the district court, Smith stated: "[Smith] is not making an argument that Iowa Code section 235B.2(5)(*a*)(3) was unconstitutional as applied, but rather is unconstitutional on its face." Thus, Smith failed to present the issue that the statute was unconstitutional as applied to the district court, which precludes any consideration of this issue on appeal.

*accord State v. Musser*, 721 N.W.2d 734, 746 n.7 (Iowa 2006); *State v. Price*, 237 N.W.2d 813, 816 (Iowa 1976). The rationale behind this principle was explained by the United States Supreme Court:

> Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court. A closely related principle is that constitutional rights are personal and may not be asserted vicariously. These principles rest on more than the fussiness of judges. They reflect the conviction that under our constitutional system courts are not roving commissions assigned to pass judgment on the validity of the Nation's laws.

*Broadrick v. Oklahoma*, 413 U.S. 601, 610–11, 93 S. Ct. 2908, 2915, 37 L. Ed. 2d 830, 839 (1973); *accord Price*, 237 N.W.2d at 816.

Of course, our principles of standing are not constitutional strictures, but are self-imposed rules of restraint. *Hawkeye Bancorp. v. Iowa Coll. Aid Comm'n*, 360 N.W.2d 798, 802 (Iowa 1985). Yet, the principle at issue is firmly entrenched within our rules of judicial restraint. *See, e.g., State v. Willis*, 218 N.W.2d 921, 923 (Iowa 1974) ("[O]ne to whom application of a statute is constitutional, with exceptions not involved here, lacks standing to attack the statute on the ground it might be susceptible of unconstitutional application to other persons or other situations."); *Upper Mo. River Corp. v. Bd. of Review*, 210 N.W.2d 828, 831 (Iowa 1973) ("Generally, one attacking the constitutionality of a statute is not the champion of any rights except his own."); *Lee Enters., Inc. v. Iowa State Tax Comm'n*, 162 N.W.2d 730, 740 (Iowa 1968) ("As a general rule the constitutionality of a statute is to be considered in the light of the standing of the party who seeks to raise the question and of its particular application."). We do not waver from this rule today, and Smith makes no claim that any recognized exception to the rule applies to this case. *See Price*, 237 N.W.2d at 816 (recognizing exceptions

when First Amendment rights are implicated or when persons who are not parties to the suit stand to lose by its outcome, but have no effective avenue for preserving their rights). We conclude Smith does not have standing to challenge the facial constitutionality of the statute.

## V. Conclusion.

The agency findings were supported by substantial evidence, and section 235B.2 was properly applied to the findings. Smith does not have standing to challenge the constitutionality of section 235B.2. We affirm the decision of the district court.

**AFFIRMED.**

All justices concur except Baker, J., who takes no part.